UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

H&R BLOCK EASTERN
ENTERPRISES, INC.,

    Plaintiff,

v.                                    CASE NO.: 1:06cv93-SPM/WCS

MICHAEL PERKINS,

    Defendant.
_____/

## ORDER ENFORCING SETTLEMENT AGREEMENT

This cause was heard on March 23, 2007 on the issue of whether Michael Perkins has good cause for his refusal to sign the settlement agreement. Upon consideration of the parties' submissions to the Court, as well as the testimony of the parties, and a review of the applicable case law, the Court finds that the settlement agreement is enforceable and Mr. Perkins does not have good cause for his refusal to sign it.

## FACTS

On May 5, 2006, H&R Block Eastern Enterprises, Inc. ("H&R Block) filed

suit against Michael Perkins for breach of contract (count 1) and tortious interference with business relations (count 2). H&R Block employed Mr. Perkins at its Gainesville office for two tax seasons and one preseason, starting on December 19, 2003 and ending on November 28, 2005. On December 10, 2004, Mr. Perkins signed the employment agreement which provides the basis for H&R Block's suit.

Section 11 of the employment agreement contains a covenant not to compete and not to solicit. It provides that upon separation of employment, Mr. Perkins for a two year period will refrain from providing tax return, bookkeeping, or any other H&R Block service or product to H&R Block's clients. The agreement also prohibits Mr. Perkins from soliciting H&R Block's clients.

Client is defined in the agreement as "(i) every person or entity whose federal or state tax return was prepared or electronically transmitted by [Mr. Perkins], or for whom [Mr. Perkins] provided bookkeeping or other additional or alternative services, during the 2004 or 2005 calendar year, and (ii) every person or entity whose federal or state tax return was prepared or electronically transmitted by [H&R Block], or for whom [H&R Block] provided bookkeeping or other additional or alternative services, in [Mr. Perkins'] district of employment during the 2004 or 2005 calendar year and with whom [Mr. Perkins] became acquainted by reason of access, knowledge, or information gained while employed by [H&R Block]."

CASE NO.: 1:06cv93-SPM/WCS

According to the allegations in the complaint, Mr. Perkins operates Perks Family Tax Service in Gainesville, Florida.  H&R Block alleges that Mr. Perkins contacted an H&R Block associate and requested the associate to provide him with a list of clients Mr. Perkins serviced while employed with H&R Block.  H&R Block also alleges that Mr. Perkins solicited H&R Block clients, intending that the clients terminate their relationship with H&R Block and enter into a relationship with his own tax service.  H&R Block's complaint requests money damages against Mr. Perkins as well as an injunction to enforce the covenant not to compete and not to solicit.

H&R Block served Mr. Perkins with the complaint on May 10, 2006.  (Doc. 3).  Thereafter, Mr. Perkins filed a motion for a thirty-day extension of time to respond to the complaint.  (Doc. 5).  The case was referred to Magistrate Judge Kornblum in accordance with Northern District of Florida Local Rule 72.2(E).  Judge Kornblum granted Mr. Perkins' motion for extension of time and set a deadline of June 30, 2006 for Mr. Perkins to respond to the complaint.  (Doc. 7).

On June 23, 2006, Mr. Perkins filed a second motion for extension of time, in which he requested an additional 120 days to respond to the complaint.  (Doc. 9).  Mr. Perkins explained that he made substantial effort to answer the complaint and that he was having difficulty finding a lawyer to represent him.  H&R Block objected on grounds of unreasonable and prejudicial delay.  (Doc. 10).  Judge Kornblum granted Mr. Perkins motion in part by allowing Mr. Perkins an

additional thirty days, that is through August 14, 2006, to file his response.  (Doc. 11).

On August 11, 2006, Mr. Perkins filed a third motion for extension of time. (Doc. 17).  This time, Mr. Perkins asked for an additional thirty days to respond to the complaint.  He explained that in June he had discussion with a lawyer assigned by Prepaid Legal Services to represent him.  On August 9, 2006, however, Prepaid Legal Services contacted Mr. Perkins and advised that the lawyer would not be representing Mr. Perkins.  Mr. Perkins stated that he did not have funds to hire a lawyer except through Prepaid Legal Services and that he needed additional time until Prepaid Legal Services appointed someone else to represent him.  H&R Block objected to Mr. Perkins' requested continuance. (Doc. 20).

Judge Kornblum issued an order denying Mr. Perkins' motion and directed Mr. Perkins to answer the complaint by August 23, 2006.  The order stated that if Mr. Perkins could not hire a lawyer, he should proceed with the case by acting as his own lawyer.  The order also stated that nothing would prevent Mr. Perkins from continuing with his efforts toward hiring a lawyer, but that the case would not be delayed while he did so.  (Doc. 21).

Mr. Perkins filed an answer on August 24, 2006.  (Doc. 22).  Thereafter, on September 9, 2006, H&R Block filed a motion, jointly on behalf of H&R and Mr. Perkins, for a settlement conference before Judge Kornblum.  (Doc. 24).

CASE NO.: 1:06cv93-SPM/WCS

Judge Kornblum granted the motion on September 15, 2006 and the settlement conference was scheduled for September 25, 2006.  (Doc. 25).  It was later rescheduled for September 29, 2006.  (Doc. 27).

On September 26, 2006, Mr. Perkins filed a counterclaim against H&R Block.  (Doc. 28).  The counterclaim sought damages against H&R Block based on a variety of grounds, including violation of the Fair Labor Standards Act, fraud, lost work, attorney fees, and punitive damages.

On September 29, 2006, Mr. Perkins and H&R Block participated in a settlement conference before Judge Kornblum.  No settlement was reached.  The parties agreed, however, to continue their efforts.  Accordingly, in an order dated October 2, 2006, Judge Kornblum directed H&R Block to send Mr. Perkins a proposed settlement agreement by email so that Mr. Perkins could consult with a lawyer regarding the terms.  (Doc. 31).  The order gave Mr. Perkins 14 days after receipt of the proposed agreement to advise whether he would agree to the terms or not.  The order stated that if settlement was not reached, the Court would prepare a scheduling order to govern the progress of the case.  In the meantime, the parties were to refrain from filing motions.

On October 17, 2006, Judge Kornblum recused himself from further participation in the case because of ex parte discussions he had with both parties during the settlement conference.  (Doc. 34).  The order of recusal also vacated the provision of the October 2, 2006 order that prohibited the parties from filing

motions.

On October 18, 2006, H&R Block filed a motion to dismiss Mr. Perkins' counterclaim (doc. 35). On that same date, H&R Block filed a motion for preliminary injunction alleging irreparable harm from Mr. Perkins' continued violation of the covenant not to compete and not to solicit. (Doc. 36). H&R Block also filed a motion to require Mr. Perkins to disclose to H&R Block the names of H&R Block clients for whom Mr. Perkins was providing services. (Doc. 37). The motion requested that conditions on the disclosure be placed to ensure compliance with federal confidentiality laws and regulations.

On October 27, 2006, H&R Block filed a motion to compel Mr. Perkins to meet with H&R Block to formulate a discovery plan, as required under Rule 26(f), Federal Rules of Civil Procedure. (Doc. 38). Mr. Perkins filed a response to the motion on October 31, 2006. (Doc. 39). Mr. Perkins stated that he had reached a tentative agreement with a lawyer to represent him and asked the Court for additional time.

On November 2, 2006, this case was reassigned to Magistrate Judge Sherrill. On November 9, 2006, Judge Sherrill issued an order that contained several rulings. (Doc. 41).

First, Judge Sherrill found that Mr. Perkins' answer and counterclaim were not properly signed. Judge Sherrill directed Mr. Perkins to file an amended answer and counterclaim by November 28, 2006, and denied as moot H&R

Block's motion to dismiss the original counterclaim.  Judge Sherrill stated that a scheduling order directing Mr. Perkins and H&R Block to conduct a Rule 26(f) meeting would be entered, thereby mooting H&R Block's motion to compel Mr. Perkins to participate in a Rule 26(f) meeting.  Judge Sherrill directed Mr. Perkins to respond to H&R Block's motion for disclosure of client information and motion for preliminary injunction by November 28, 2006.

On November 28, 2006, Mr. Perkins filed a motion for a 2-week extension of time to respond.  (Doc. 46).  As grounds, Mr. Perkins stated that he was awaiting approval of his loan application to finance the lawsuit.  Judge Sherrill granted Mr. Perkins' motion and established a new deadline of December 15, 2006 for Mr. Perkins to respond to the motion for preliminary injunction. (Doc. 47).

On December 1, 2006, H&R Block filed a motion for a telephonic status hearing.  (Doc. 48).  In the motion, H&R Block stated that it has been attempting to coordinate the Rule 26(f) meeting, an inspection of Mr. Perkins' office, and Mr. Perkins' deposition.  Mr. Perkins, however, refused to discuss these matters with H&R Block except through his lawyer, who he had not yet retained.

On December 2, 2006, Judge Sherrill issued an order vacating his previous order.  (Doc. 49)  He set a telephonic status hearing for December 5, 2006, and clarified that there were no extensions of any deadlines in effect and that he would decide at the hearing whether any extensions would be granted.

CASE NO.: 1:06cv93-SPM/WCS

On December 5, 2006, Mr. Perkins was represented at the telephonic status hearing by Attorney Carl Hayes.  After the hearing, Judge Sherrill issued an order (doc. 53) that provided the following, in pertinent part.  First, Judge Sherrill directed the parties to conduct their Rule 26(f) meeting by December 13, 2006, and to file their joint report by December 28, 2006.  Second, Judge Sherrill directed Mr. Perkins to file an amended answer and any counterclaims by December 15, 2006.  Third, Judge Sherrill directed H&R Block and Mr. Perkins to confer on H&R Block's motion (doc. 37) regarding the disclosure of client information.  If the parties were unable to reach agreement, Mr. Perkins was to file a response by December 12, 2006.  Fourth, Judge Sherrill directed Mr. Perkins and H&R Block to confer as to a date in early January for a hearing on H&R Block's motion for preliminary injunction.  Firth, Judge Sherrill directed Mr. Perkins to respond to interrogatories and requests for production of documents by December 18, 2006.  Sixth, Judge Sherrill allowed H&R Block to inspect and photograph the interior and exterior of Mr. Perkins' business office on December 18, 2006.  Seventh, Judge Sherrill confirmed December 19, 2006 as the date for Mr. Perkins' deposition.

Despite the passing of deadlines set by Judge Sherrill, Mr. Perkins filed no amended answer to the complaint and no response to the motion to disclose client information.  Instead, on December 28, 2006 (the date the parties' joint report was due), H&R Block, jointly on behalf of H&R Block and Mr. Perkins, filed

a motion advising that settlement had been reached and requesting entry of a consent judgment.  (Doc. 58).

On January 15, 2007, H&R Block filed a Motion to Enforce Settlement. (Doc. 59).  In the motion, H&R Block stated that H&R Block and Mr. Perkins, through his Attorney Carl Hayes, reached an oral agreement to settle the case. On December 21, 2006, H&R Block sent a written settlement agreement memorializing the terms to Attorney Hayes.  On December 28, 2006, H&R Block provided Attorney Hayes with a second set of documents correcting a typographical error that Mr. Perkins identified in the agreement.  Attorney Hayes consented to the joint motion (doc. 58), which advised the Court that settlement had been reached and requested entry of a consent judgment.  On December 31, 2006, Attorney Hayes sought an amendment of the agreement, but H&R Block refused.  Mr. Perkins refused to execute the settlement agreement.

Mr. Perkins filed no response to H&R Block's motion to enforce the settlement agreement, despite the provisions of Local Rule 7.1(C), which requires the opposing party to file a response within 14 days.  "Failure to file a responsive memorandum may be sufficient cause to grant the motion."  N.D. Fla. Loc. R. 7.1(C).

On February 8, 2007, this Court entered the parties' Consent Order and Judgment (doc. 61).  This Court also issued an Order Enforcing Settlement Agreement (doc. 60), which directed Mr. Perkins to sign the settlement

agreement by February 19, 2007.  The order warned that "[f]ailure to do so may lead to sanctions for contempt of court."

Mr. Perkins did not sign the settlement agreement as ordered.  On February 22, 2007, H&R Block filed a motion requesting that Mr. Perkins be required to show good cause why he should not be held in contempt of court.  (Doc. 62).  On February 26, 2007, the Court issued an Order Directing Defendant to Sign Agreement or Show Cause.  (Doc. 63).  The order gave Mr. Perkins a deadline of March 8, 2007 to sign and forward the settlement agreement to H&R Block or file a written showing of good cause for his refusal to do so.

By March 8, 2007, Mr. Perkins had still not signed the settlement agreement and he had not filed a written showing of good cause for his refusal.  On March 8, 2007, H&R Block, with the agreement of Attorney Hayes, filed a motion requesting a hearing before the Court.  (Doc. 64).  The motion explained that Mr. Perkins had taken the position that Attorney Hayes did not have authority to settle the case on his behalf.  The motion further stated that Mr. Perkins desired to be heard by the Court.  The parties jointly requested that the hearing take place on Wednesday, March 14th at a time to be set by the Court.

On March 12, 2007, the Court issued a notice of hearing, advising the parties that their hearing had been scheduled for 1:30 p.m. on Wednesday, March 14, 2007.  (Doc. 65).  Neither Attorney Hayes nor Mr. Perkins appeared for the hearing at 1:30.  The courtroom deputy clerk contacted Attorney Hayes by

telephone. Attorney Hayes explained that he was not aware that the date and time for the hearing had been set. He apologized and accepted responsibility for his failure to appear and his failure to advise Mr. Perkins of the hearing.[1] Attorney Hayes contacted Mr. Perkins by telephone. All parties agreed to reschedule the hearing for 2:00 p.m. on Friday, March 23, 2007.

On the morning of Friday, March 23, 2007, the attorney for H&R Block contacted the Court and advised that he was experiencing flight delays. The start of the hearing, therefore, was postponed until shortly after 3:00 p.m. when the attorney arrived. At the hearing, Attorney Hayes and Mr. Perkins testified.

According to Attorney Hayes, at the time he entered the case as Mr. Perkins' attorney, Mr. Perkins was facing an upcoming injunction hearing to shut his business down, a video deposition, and an inspection of his business.[2] Attorney Hayes reviewed the settlement agreement previously rejected by Mr. Perkins and asked Mr. Perkins what problems he had with it. According to Attorney Hayes, Mr. Perkins advised that he could go along with the agreement except for the inclusion of a $60,000.00 money judgment, which would be part of the public record. Mr. Perkins explained to Attorney Hayes that he was running for public office and did not want a money judgment against him in the public

---

[1] The Court considered imposing sanctions against Attorney Hayes, but finds that they are not warranted.

[2] Mr. Perkins also had a deadline to respond to interrogatories and a request for production of documents.

CASE NO.: 1:06cv93-SPM/WCS

records.

Thereafter, Attorney Hayes negotiated with H&R Block on Mr. Perkins' behalf.  He was able to convince H&R Block to accept a promissory note from Mr. Perkins in lieu of a money judgment that would be on the public record.  Attorney Hayes believed at this point that the case had settled.  He had authority from Mr. Perkins to negotiate, and Mr. Perkins had advised that he would agree to a settlement that did not include a money judgment that would be part of the public record.

When Attorney Hayes advised Mr. Perkins that he had negotiated a settlement with H&R Block that did not include a money judgment against him, Mr. Perkins questioned Attorney Hayes as to why H&R Block was willing to forgo the money judgment with Attorney Hayes' negotiations, but was unwilling to do so when Mr. Perkins negotiated on his own.  Attorney Hayes suggested that attorneys communicate on professional terms, which may make it easier for two attorneys to reach agreement.

Attorney Hayes stated that Mr. Perkins wanted to add to the settlement agreement a term prohibiting H&R Block from making disparaging comments about Mr. Perkins.  Attorney Hayes believed that this was not an essential term of settlement, and he continued negotiations with H&R Block to include a non-disparagement term in the settlement agreement.  Attorney Hayes and H&R Block made progress negotiating this additional term until Mr. Perkins advised

Attorney Hayes that Attorney Hayes did not have authority to settle the case. See Doc. 66.

Mr. Perkins testified that he retained Attorney Hayes on December 4, 2006 (the day before the hearing with Judge Sherrill).  Mr. Perkins acknowledged that he and Attorney Hayes discussed the prior settlement agreement offered by H&R Block.  Mr. Perkins stated that he discussed with Attorney Hayes the objection he had to the public record of a money judgment.  Mr. Perkins stated that he gave Attorney Hayes latitude to negotiate with H&R Block on his behalf. Mr. Perkins denied, however, that he gave Attorney Hayes authority to settle.

Mr. Perkins stated that Attorney Hayes presented him with the settlement agreement and advised him that the December 18 inspection of his business premises and December 19 video deposition were cancelled.  Mr. Perkins acknowledged that Attorney Hayes told him that his case was over.

Mr. Perkins stated that he reviewed the settlement agreement and pointed out a typographical error.  Mr. Perkins explained, however, that he believed the settlement agreement was just a proposal and that negotiations were on-going. Mr. Perkins advised Attorney Hayes in writing of the problems that he had with the settlement agreement.  In particular, Mr. Perkins believed that he should not be required to turn away H&R Block clients if they came to him for services.  He was concerned about H&R Block making disparaging comments about him.  He was also concerned that the agreement contained no provision to cover H&R

Block's breach of the agreement.

Mr. Perkins stated that was not aware that Attorney Hayes agreed to the consent order and judgment. Mr. Perkins acknowledged that he received from Attorney Hayes the Court's February 8, 2007 order enforcing the settlement agreement. (Doc. 60). He denied receiving the February 26, 2007 Order Directing Defendant to Sign Agreement or Show Cause. (Doc. 63)

## **APPLICABLE LAW**

The Court begins its analysis by noting that it is empowered to enforce oral settlement agreements in causes of action presently before it. See Murchison v. Grand Cypress Hotel Corp., 13 F.3d 1483, 1485-86 (11th Cir. 1994); South Beach Suncare, Inc. v. Sea & Ski Corp., 1999 WL 350458, at *11 (S.D.Fla. May 17, 1999). The determination as to whether a binding settlement agreement was reached by the parties is governed by Florida contract law principles. U.S. Fire Insurance v. Caulkins Indiantown Citrus Corp., 931 F.2d 744, 749 (11th Cir. 1991); Reed v. United States, 717 F.Supp. 1511, 1515 (S.D.Fla. 1988). The standard of proof required to enforce a settlement agreement, provided one is found to exist, is merely a preponderance of the evidence. See, e.g., South Beach Suncare, Inc., 1999 WL 350458, at *11; Williams v. Ingram, 605 So.2d 890, 893 n. 2 (Fla. 1st DCA 1992).

Under Florida law, an objective test is employed to assess whether a contract, or settlement, may be duly enforced. Robbie v. City of Miami, 469

CASE NO.: 1:06cv93-SPM/WCS

So.2d 1384, 1385 (Fla. 1985).  This test, considers not whether there was an "agreement of two minds in one intention, but on the agreement of two sets of external signs – not on the parties having meant the same thing but on their having said the same thing."  Id. (quoting Gendzier v. Bielecki, 97 So.2d 604, 608 (Fla. 1957) (citation omitted)).  "To be judicially enforceable, a settlement 'must be sufficiently specific and mutually agreeable as to every essential element.'" Cheverie v. Geisser, 783 So.2d 1115, 1119 (Fla. 4th DCA 2001) (quoting Grimsley v. Iverarry Resort Hotel, Ltd., 748 So.2d 299, 301 (Fla. 4th DCA 1999); see State Farm Mutual Automobile Insurance Co. v. Interamerican Car Rental, 781 So.2d 500, 502 (Fla. 3d DCA 2001) ("Where the parties have agreed to the essential terms of a settlement, it will be enforced.").

Courts have held that an oral settlement will be enforced if the parties assent to all essential terms.  W.R Townsend Contracting Inc. v. Jensen Civil Construction Inc., 728 So.2d 297, 300 (Fla. 1st DCA 1999) ("To state a cause of action for breach of an oral contract, a plaintiff is required to allege facts that, if taken as true, demonstrate that the parties mutually assented to 'a certain and definite proposition' and left no essential terms open."); Goodman v. Goodman, 290 So.2d 552, 555 (Fla. 1st DCA 1973) ("[T]o create a contract, it is essential that there should be reciprocal assent to a certain and definite proposition.  So long as any essential matters are left open for further consideration, the contract is not complete, and the minds must assent to the same thing in the same sense.

. . .").

### III. ANALYSIS

The Court begins by noting that when Attorney Hayes began settlement negotiations on behalf of Mr. Perkins, H&R Block had on the table a proposed settlement agreement that contained all essential terms.  See Nichols v. Hartford Insurance Co., 834 So.2d 217, 219 (Fla. 1st DCA 2003) ("The definition of 'essential term' varies widely according to the nature and complexity of each transaction and is evaluated on a case-by-case basis.").  Attorney Hayes reviewed the agreement with Mr. Perkins and asked Mr. Perkins what problems he had with the agreement.  Mr. Perkins identified as problematic the term of the agreement that provided for entry of a money judgment, which would be a public record.  But for that provision, Mr. Perkins told Attorney Hayes that the settlement agreement was acceptable to him.  Mr. Perkins also authorized Attorney Hayes to negotiate with H&R Block on his behalf.

Based upon the communications between Mr. Perkins and Attorney Hayes, the Court finds that Mr. Perkins gave Attorney Hayes clear and unequivocal authority to enter into the settlement agreement that did not include a public judgment.  Specifically, Mr. Perkins authorized Attorney Hayes to negotiate with H&R Block.  Mr. Perkins advised Attorney Hayes of the terms that would be acceptable to him.  After the settlement was reached, Attorney Hayes advised Mr. Perkins that his case was over and that no inspection of his business

premises or deposition would take place.  Thereafter, Mr. Perkins benefitted from the settlement by continuing to operate his business into the new tax season.  He was not subject to inspection, deposition, the need to respond to interrogatories and requests for production, or the risk of a preliminary injunction, which Judge Sherrill was prepared to hear in early January.  Despite being a business professional who is fully capable of understanding the settlement and the effect of settlement on the litigation,   Mr. Perkins did not object to the settlement until Court orders to enforce it were issued.

These circumstances demonstrate that Mr. Perkins did in fact give Attorney Hayes clear and unequivocal authority to enter into the settlement agreement.  Murchison, 13 F.3d at 1485-86.  Moreover, Mr. Perkins actually benefitted from the settlement agreement through the cessation of litigation. "[W]here a party accepts the benefits of a settlement or compromise of his case and he knows or in the exercise of due diligence should have known all the facts concerning that settlement (as in the case at bar), he ratifies that settlement by acceptance of those benefits whether the settlement in the first instance was unauthorized by him or not and he is thereafter estopped to attack the settlement and judgment entered thereon." Nagymihaly v. Zipes, 353 So.2d 943, 944 (Fla. 3d DCA 1978).

"Settlement agreements are favored by the courts as they are a means of resolving disputes without the necessity of a full trial, provided that the settlement

is entered into fairly and in *good faith* by competent parties." <u>Levenson v. American Laser Corp.</u>, 438 So.2d 179, 182 (Fla. 2d DCA 1983) (emphasis added).  Mr. Perkins' conduct raises serious questions regarding good faith dealings.  Based on the foregoing, it is

ORDERED AND ADJUDGED:

1.  Mr. Perkins does not have good cause for his refusal to sign the settlement agreement.

2.  Mr. Perkins shall have up to and including April 6, 2007 to sign the settlement agreement and all necessary documents to effect settlement.

3.  Failure to sign the settlement agreement as ordered will result in a finding by the Court that Mr. Perkins has breached the settlement agreement and entry of an Order and Judgment consistent therewith.

DONE AND ORDERED this 30th day of March, 2007.

*s/ Stephan P. Mickle*
Stephan P. Mickle
United States District Judge